**UNITED STATES, Appellee,**

v.

**Raphael A. LAVINE, Airman First Class, U. S. Air Force, Appellant.**

No. 40,228.
ACM 22634.

U. S. Court of Military Appeals.

June 14, 1982.

For Appellant: *Captain Douglas H. Kohrt* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Captain George D. Cato* (argued); *Colonel James P. Porter* and *Major Robert T. Mounts* (on brief).

*Opinion of the Court*

FLETCHER, Judge:

Approximately two months prior to his departure from the Republic of the Philippines, appellant imported an expensive car into the country via Manila, setting in motion the events leading to his conviction at general court-martial.[1] We granted review of the following three issues:

1. Appellant was tried by general court-martial with members in November 1979, at Clark Air

## I

WHETHER THE APPELLANT'S ADMISSIONS WERE OBTAINED IN CONTRAVENTION OF HIS ARTICLE 31 RIGHTS.

## II

WHETHER THE MILITARY JUDGE'S INSTRUCTIONS SHIFTING THE BURDEN OF PROOF TO THE APPELLANT WERE PREJUDICIAL AS A MATTER OF LAW.

## III

WHETHER THE GOVERNMENT WAS REQUIRED TO PROVE THAT THE APPELLANT DID NOT IMPORT HIS AUTOMOBILE INTO THE PHILIPPINES TO MEET HIS "REASONABLE ANTICIPATED NEEDS" AS AUTHORIZED BY REGULATION SINCE UNDER *UNITED STATES V. VERDI*, 5 M.J. 330 (CMA 1978), THIS WAS AN ELEMENT OF THE OFFENSE.

After review and oral argument, we conclude that none is meritorious and that affirmance of this case is called for.

## I

During trial, an Article 39(a)[2] session was conducted to litigate the admissibility of an alleged pretrial admission by appellant that he no longer owned the imported car. Two witnesses were central. Sergeant Dan Somers, assigned to Merchandise Control, customer service, received documentation of the importation of a 1979 Lincoln through the port of Manila. Sergeant Somers was aware of certain past merchandise control irregularities by appellant and that most vehicles shipped into the Philippines on behalf of servicepersons enter at Subic Bay. Notified that appellant was prepared to process his departure from the country, Sergeant Somers directed an investigation to ascertain actual importation of the Lincoln and appended this information to appellant's processing documentation.

■ As an adjunct to his transfer from the country, appellant, in due course, contacted Staff Sergeant Charles Mason of the Merchandise Control Office to complete his out-processing responsibilities. Sergeant Mason obtained appellant's file from Sergeant Somers and was told, "Make sure he accounts for this car, ask him about this car." Sergeant Mason, likewise, was aware of appellant's past difficulties. Thus, the regular out-processing interview was begun by Sergeant Mason asking appellant about the Lincoln. Appellant responded by asking Sergeant Mason if there was any pertinent paperwork in his file. Sergeant Mason responded that indeed there was. At that point appellant informed Sergeant Mason that he did not have the car any longer. At no time—as appellant points out before us—did Sergeant Mason advise appellant of his Article 31[3] rights.

We rule that there existed no legal requirement that Sergeant Mason do so. Nothing in the car importation paperwork suggested that there had been an illegal transaction. We agree with the ruling of the court below that even though Sergeant Mason knew that car was imported through a commercial carrier near the end of appellant's duty assignment, he did not become suspected of the crime until after he stated that he no longer had possession of the Lincoln. *United States v. Lavine*, 10 M.J.

Base in the Republic of the Philippines, and was found guilty of importing a tax-exempt automobile for other than reasonable anticipated needs—in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

His sentence included confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the grade of E–1. The convening authority approved confinement for one year, forfeiture of $299 pay per month for 12 months and reduction to E–1. (December 26, 1979) On July 31, 1980, the convening authority remitted the remaining portion of the confinement at hard labor (7 months 26 days served).

The Air Force Court of Military Review affirmed this case on October 22, 1980 (10 M.J. 659), and after corrections reaffirmed on November 19, 1980. 10 M.J. 661.

2. UCMJ, 10 U.S.C. § 839(a).

3. UCMJ, 10 U.S.C. § 831.

659 (A.F.C.M.R.1980). *United States v. Johnstone*, 5 M.J. 744 (A.F.C.M.R.1978), cited by appellant, does not apply to the present case. There, the accused was specifically suspected of an offense, and an informant was instructed by military investigators of the Air Force Office of Special Investigations to ask the accused specific questions. Here, the entire procedure and the questioning by Sergeant Mason were in the regular course of business of the Merchandise Control Office and were required of all personnel leaving the Philippines.

## II

■ Appellant further claims that instructions of the military judge improperly and prejudicially shifted the burden of proof to him. We cannot agree. The following are extracts from the judge's instructions on findings:

[a] [T]he burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the United States, and the accused is not required to produce any evidence whatsoever.

[b] The third element is that on or about 4 April 1979 at Manila, Republic of the Philippines, the accused violated a regulation by importing a tax-exempt motor vehicle, that is, a passenger car into the Philippines for purpose [sic] other than to meet his reasonably anticipated needs.

[c] With regard to ... [the charge of violation of regulation] if you find that at the time the accused imported this vehicle into Manila, that it was his intent to use it to meet his reasonably anticipated needs, you cannot find him guilty of this charge.

[d] I must caution you against interpreting any comments, statements ruling or instruction which I have given during this trial as an indication that the accused has the burden of proving his innocence. On the contrary, the burden is always on

the government to prove the accused guilty beyond a reasonable doubt. And that burden never shifts throughout the trial.

Taken as a whole, these instructions clearly require acquittal unless the Government proved beyond a reasonable doubt that appellant imported the Lincoln into the Philippines for a purpose other than to meet his reasonably anticipated needs.

## III

■ But appellant urges that under *United States v. Verdi*, 5 M.J. 330 (C.M.A. 1978), the Government was required to prove the importation did not meet his reasonably anticipated needs. Once again, we are unable to agree.

Appellate defense counsel cites the following language from *Verdi*,

[W]here an exception is contained within the criminal statute or regulation, the burden of proof is upon the prosecution also to prove that the accused does not fall within the exceptions contained in the statute.

*Id.* at 334 (footnote omitted). Thus, appellant argues that as this particular regulation excepts a transfer made to tax-exempt individuals and the Government made no showing of what actually happened to the vehicle, they have failed to carry the burden. In contrast, the Government urges such a reading of *Verdi* is overly broad.

We have recently ruled unanimously that *Verdi* held that an accused can be held accountable for the burden of production of circumstances bringing him within an exception to a criminal regulation where this is raised by the evidence. *United States v. Cuffee*, 10 M.J. 381 (C.M.A.1981). In the instant case appellant failed in his burden of production of some showing that the imported vehicle fell within the exception in paragraph 3c of the regulation.[4] *United States v. Cuffee, supra.*

4. CINCPACREPPHIL Instruction 4066.7L, enclosure (6).

PROHIBITED ACTS AND PRACTICES
Enclosure 6

1. *Definitions.* The terms "tax exempt property" and "tax exempt motor vehicles"

as used herein refers to personal property or motor vehicles in the Philippines upon which no import, excise consumption or other tax, duty or import has been paid by reason of the exemption granted pursuant to Article V of ... [the Military Bases Agreement of 1947].

\* \* \* \* \* \*

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COOK concur.

3. *Tax Exempt Motor Vehicles.* The following acts and practices relating to the acquisition, possession and disposition of motor vehicles are *prohibited*:

    \*    \*    \*    \*    \*    \*

c. The importation of tax exempt motor vehicles into the Philippines for the purpose of sale, disposition or for any purpose other than to meet reasonable anticipated needs of the owner.

    \*    \*    \*    \*    \*    \*

e. The loan, mortgage, bailment, assignment or similar transfers of a tax exempt motor vehicle which permits actual use or possession of such exempt motor vehicle by a non-tax exempt person even though the legal title remains in a tax exempt transferor.